# EXHIBIT 3

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                  **SUPERIOR COURT**

                                                        **C.A. NO.**

| | |
|---|---|
| SANDRA L. HERFORTH, on behalf of herself and others similarly situated, | ) <br> ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) <br> ) |
| FORD MOTOR CREDIT COMPANY, LLC | ) <br> ) |
| Defendant. | ) <br> ) |

## CLASS ACTION COMPLAINT

1.      Plaintiff, Sandra Herforth, brings this class action against Ford Motor Credit Company, LLC (FMCC) on her own behalf and that of all others similarly situated, seeking declaratory, injunctive and monetary relief to remedy FMCC's unlawful auto repossession and deficiency collection practices.

### Introduction

2.      Provisions of the Retail Installment Sales Act, c. 255B, §§ 20A, 20B ("RISA") and Uniform Commercial Code, c. 106, §§ 9-610 to 9-625 ("UCC") form a complementary scheme governing the repossession and subsequent sale of consumers' motor vehicles: before repossession RISA requires that creditors send defaulting borrowers a notice of their right to cure, and after repossession both RISA and the UCC require creditors to send a repossession notice that includes critical information about a borrower's rights, including a description of the liability for a deficiency. M.G.L. c. 255B

§§ 20A, 20B(d); c. 106-9614. Massachusetts law limits the deficiency a creditor can seek, requiring the creditor to use the fair market value of the vehicle, rather than the sale price, when calculating a deficiency. RISA, c. 255B § 20B(e)(1).

3.      FMCC flouts these protections. It uses form notices and form contracts that affirmatively misrepresent borrowers' rights after repossession, stating that FMCC can legally collect deficiency balances based solely on the sale price. FMCC then seeks to collect these inflated balances by sending demand letters itself and through collection agencies, reporting the inflated balances as valid debts on consumers' credit reports and ultimately suing consumers for the inflated amounts, and obtaining judgments often by default. FMCC's practices affect at least hundreds of Massachusetts consumers. The effect on borrowers is significant: fair market values typically exceed the sale prices by fifty percent or more.

4.      As more particularly described below, FMCC sent Ms. Herforth and similarly situated Massachusetts consumers a form Post-Repossession Notice which misstates important consumer rights provided by the UCC and RISA, including the borrower's liability for a deficiency following sale of the vehicle. UCC § 9-614(1)(B). FMCC's notice states that the deficiency will be based on the sale price. As above, § 20B(e)(1) of RISA expressly limits a deficiency to the difference between the fair market value and the outstanding loan amount.

5.      FMCC also sent Ms. Herforth and similarly situated Massachusetts consumers, from whom it sought a deficiency after sale, a form Deficiency Demand Notice that seeks more than RISA allows. The form Demand Notice seeks a purported deficiency balance calculated upon the difference between the amount realized from the

2

sale of the repossessed vehicle and the outstanding debt on the loan, contrary to c. 255B § 20B.

6.    By misrepresenting borrowers' rights, misrepresenting the amounts legally owed, and seeking and collecting illegally inflated amounts, FMCC has violated the UCC, RISA, and c. 93A.

### Parties

7.    Plaintiff, Sandra Herforth, is an adult residing in Middlesex County.

8.    Defendant, FMCC, is a Delaware limited liability company with its principal place of business in Dearborn, Michigan. At all times material hereto, FMCC was engaged in the business of providing financing to purchasers of automobiles in Massachusetts.

### Jurisdiction and Venue

9.    This court has jurisdiction to grant the relief sought pursuant to M.G.L. c. 214, §§ 1, 5; c. 212 § 3, and c. 231A, § 1.

10.   Venue lies in this County because Ms. Herforth resides in this county and FMCC has sued her here.

### Facts Pertaining To Ms. Herforth's Transaction

11.   On February 19, 2006, Ms. Herforth entered into a motor vehicle retail installment sale contract ("RISC") for the purchase of a 2006 Ford Explorer for $47,054, financing $45,861 of this amount. A copy of the RISC is attached as Exhibit A. The RISC provides that it will be governed by the laws of the state of Massachusetts. *Id.* at ¶ 0.

12.   The RISC states that "if the vehicle is taken back and sold, the money

3

from the sale, less allowed expenses, will be used to pay the amount still owed on the contract." *Id.* at ¶ L. The RISC further states that "if the money from the sale is not enough to pay off this contract and costs, you will pay what is owed to the Creditor." *Id.*

13.     On June 17, 2009, FMCC sent Ms. Herforth a notice of right to cure, entitled "Rights of Defaulting Borrower Under the Massachusetts Motor Vehicle Installment Sales Act." (Exhibit B, attached). This Cure Notice describes Ms. Herforth's liability for a deficiency as the difference between the sale price and the outstanding balance on the contract. It does not mention the fair market value.

14.     Specifically, the cure notice states in relevant part: "If the Collateral is sold, the sale price minus expenses will be deducted from your debt;" and "The sale price might not cover your debt and expenses. If that happens, you'll owe the difference to us or the dealer original creditor...."

15.     In or about the early part of October 20, 2009, FMCC caused the automobile to be repossessed.

16.     On October 26, 2009, FMCC sent Ms. Herforth a notice (the "Post-Repossession Notice") advising her of the repossession and of its intent to dispose of the vehicle. A copy of the Post-Repossession Notice is attached as Exhibit C. This notice similarly described Ms. Herforth's liability for a deficiency as the difference between the sale price and the amount owed on the contract. Specifically, the notice states: "The money that we get from the sale (after paying our costs, including reasonable attorney's fees and legal expenses if permitted by law) will reduce the amount you owe. If we get less money than you owe, you will still owe us the difference."

17.     FMCC subsequently sold the vehicle for $15,600, more than $30,000 less

4

than Ms. Herforth paid for it. FMCC so informed Ms. Herforth by sending her a notice (the "Deficiency Demand Notice") dated December 9, 2009 advising her of the sale and of her ostensible obligation to pay a deficiency balance alleged to be $18,786.94. A copy of the Deficiency Demand Notice is attached as Exhibit D.

18.     FMCC calculated the alleged deficiency balance in whole or in part by subtracting the amount realized upon sale of the repossessed vehicle from the full amount owing under the contract, plus expenses. *See* Exhibit D.

19.     On or about May 10, 2010, FMCC commenced a lawsuit in the District Court against Ms. Herforth seeking a deficiency of $18,786.94, plus interest.

20.     FMCC reported this alleged deficiency on Ms. Herforth's credit report as a valid debt in the amount of $18,786.

21.     According to periodically published trade estimates of the retail value of the vehicle, which estimates are generally recognized in the motor vehicle sales business, in December 2009 the fair market value of Ms. Herforth's vehicle was approximately $23,550, approximately 50% more than the sale price obtained by FMCC.

22.     On July 21, 2010, Ms. Herforth sent a demand for relief pursuant to c. 93A to FMCC, on behalf of herself and a class of those similarly situated. FMCC responded on or about August 19, 2010 offering a sum in set-off to Ms. Herforth individually, to reduce the deficiency amount it seeks from her, but refused to offer any economic relief to class members.

### Applicable Law

23.     The Cure Notice FMCC sent to Ms. Herforth is required by RISA, c. 255B § 20A(b).

24.     The Post Repossession Notice FMCC sent Ms. Herforth is jointly required by RISA (c. 225B § 20B) and the UCC (c. 106, §§ 9-610 to 9-625). These provisions of Massachusetts law regulate the repossession and disposition of motor vehicles financed under Retail Installment Sales Agreements. To protect consumers' valuable property interests in financed vehicles, RISA and the UCC impose strict and mandatory requirements on sellers and holders of Retail Installment Sales Agreements, such as FMCC, following a repossession.

25.     RISA provides, in pertinent part in c. 255B § 20(B)(d) that its provisions must be read as a complement to the UCC repossession provisions:

> (d) The creditor may after gaining possession sell or otherwise dispose of the collateral. Unless displaced by the provisions of this section and section twenty A the rights and obligations of the parties, including the redemption and disposition of the collateral shall be governed by the provisions of Part 6 of Article 9 of chapter 106.

26.     Before a creditor may sell a repossessed vehicle, the UCC requires that it send the borrower "a reasonable authenticated notification of disposition," a Post-Repossession Notice as described in this Complaint. UCC, § 9-611.

27.     Section 9-614(1) provides, in pertinent part, that "[a] notification of disposition must provide the following information":

> (A) the information specified in Section 9-613(1); and
>
> (B) a description of any liability for a deficiency of the person to which the notification is sent... .

28.     Before a creditor may seek a deficiency, § 9-616(a) provides that the creditor must send the consumer "a writing that ... provides an explanation in accordance with subsection (c) of how the secured party calculated the surplus or deficiency...." §§ 9-616(a)(1)(B), (D).

29.    RISA provides, in c. 255B § 20B(e)(1), that the creditor must calculate the deficiency based upon the difference between the outstanding debt and the vehicle's fair market value:

> (e)(1) If the unpaid balance of the consumer credit transaction at the time of default was two thousand dollars or more the creditor shall be entitled to recover from the debtor the deficiency, if any, resulting from deducting the fair market value of the collateral from the unpaid balance due and shall also be entitled to any reasonable repossession and storage costs, provided he has complied with all provisions of this section.

30.    RISA further provides, in § 20(B)(e)(2), that recognized evaluation reports such as the NADA Used Car Guide or Kelley Blue Book shall be presumed to establish fair market value:

> (e)(2) In a proceeding for a deficiency the fair market value of the collateral shall be a question for the court to determine. Periodically published trade estimates of the retail value of goods shall, to the extent they are recognized in the particular trade or business, be presumed to be the fair market value of the collateral.

31.    A creditor's failure to comply with the mandatory notice requirements of RISA and UCC §§ 9-613 and 9-614 renders it liable for statutory damages in the amount of the finance charge and 10% of the principal borrowed, pursuant to c. 106, § 9-625.

32.    Failure to comply with UCC § 9-616 subjects the creditor to liability for statutory damages of $500 if the noncompliance is part of a pattern or practice, pursuant to c. 106, § 9-625(e)(5).

## Class Allegations

33.    On information and belief, the RISC, attached as Exhibit A, is the standard form of Motor Vehicle Retail Installment Sale Agreement that FMCC has entered into with Massachusetts consumers at all material times.

34.    On information and belief, the Cure Notice, attached as Exhibit B, or

variants of it containing substantially the same language described in paragraphs 11 and 12, is a standard form notice FMCC has sent to Massachusetts consumers since at least June 24, 2004.

35.    On information and belief, the Post-Repossession Notice, attached as Exhibit C, or variants of it containing the language described in paragraph 14, or substantially similar language, is the standard form of Post-Repossession Notice FMCC has sent to Massachusetts consumers since at least June 24, 2004.

36.    On information and belief, the Deficiency Demand Notice, attached as Exhibit D, or variants of it containing the enumerated defects described in paragraphs 15 and 16, is the standard form of Deficiency Demand Notice FMCC has sent to Massachusetts consumers since at least June 24, 2004 as well.

37.    On information and belief, FMCC's failure to send Ms. Herforth and similarly situated Massachusetts borrowers a Post-Repossession Notice and, where applicable, a Deficiency Demand Notice compliant with the requirements of law, and FMCC's practice of calculating deficiency balances based on the difference between the vehicle's sale price and the amount outstanding on the contract, without regard to the fair market value, is part of a pattern, or consistent with a practice, of noncompliance.

38.    The class is composed of all Massachusetts residents who, since June 24, 2004:

(a)    have or had a RISC held by FMCC;

(b)    had their motor vehicle repossessed in Massachusetts by FMCC or its agents and:

(i) were sent a post-repossession notice or notice of right to cure, or post sale notice which describes the borrower's liability for a deficiency as the

difference between the amount obtained at the sale and the amount owed on the contract.

(ii) were sent a post sale notice which states a deficiency balance calculated upon the difference between the amount realized upon sale of the repossessed vehicle and the full amount owing under the contract, instead of the difference between the outstanding debt and the vehicle's fair market value.

(c)  have not obtained a discharge in bankruptcy applicable to any such RISC.

39.    Based on FMCC's loan volume and the number of auto loan defaults and auto repossessions resulting from that volume, the prospective class numbers at least in the hundreds, making joinder of all members impractical. The exact size of the proposed class and the identity of the class members are readily ascertainable from FMCC's business records.

40.    There are questions of law and fact common to the class, which predominate over any questions affecting only individual class members.  The principal common issues with respect to the class are whether: FMCC's form Post Repossession Notice(s) breaches its contract with class members; whether the Notice(s) violate the UCC and RISA; whether its practice of seeking deficiencies calculated upon the difference between the amount realized upon sale of the repossessed vehicle and the full amount owing under the contract breaches its contract with class members and violates RISA; and whether FMCC's conduct violates Chapter 93A.

41.    There are no difficulties likely to be encountered by the Court in the management of this proposed class action. There are no individual questions, other than those which can be determined by ministerial inspection of FMCC's records, and the issues of liability are determinable entirely from the face of the operative documents.

42.    Ms. Herforth's class claims are typical of those of the class she seeks to

9

represent, and she will fairly and adequately protect and represent the interests of the class. There is no conflict between the claims of Ms. Herforth as class representative and the claims of the proposed class.

43.     A class action is superior to other methods for the fair and efficient adjudication of this controversy. Because the damages suffered by the individual class members may be relatively small compared to the expense and burden of litigation, it would be impractical and economically unfeasible for class members to seek redress individually. In addition, it is likely that most class members are unaware that they have claims. Finally, the prosecution of separate actions by the individual class members, even if possible, would create a risk of inconsistent or varying adjudications with respect to the individual class members against FMCC.

44.     Ms. Herforth is represented by counsel competent and experienced in both consumer protection and class action litigation.

**Causes Of Action**

**Count I**
**(Violation Of UCC § 9-614)**

45.     FMCC's Post-Repossession notice violates UCC § 9-614(1) because it omits the disclosure required by § 9-614(B), specifically: an accurate description of any liability for a deficiency of the person to which the notification is sent.

**Count II**
**(Violations Of UCC § 9-616)**

46.     FMCC's Post-Repossession notice violates UCC § 9-616(c)(5) because it fails to state the amount, in the aggregate or by type, and types of credits, including rebates of interest or credit service charges, to which the obligor is known to be entitled

and which are not reflected in the amount in paragraph (1).

47.     FMCC's Post-Repossession failure to send Ms. Herforth and class members the "explanation" of deficiency mandated by § 9-616 is part of a pattern, or consistent with a practice, of noncompliance with that statute.

## Count III
## (Violations Of RISA §§ 20B)

48.     FMCC's Post-Repossession notice violates RISA § 20B(d) because it omits the UCC disclosures required by UCC §§ 9-614 and 9-616, as described in Counts I-II.

49.     FMCC's Post-Repossession notice violates RISA § 20B(e)(1), as does its conduct, because it seeks deficiencies calculated upon the difference between the amount realized upon sale of the repossessed vehicle and the full amount owing under the contract, instead of the difference between the outstanding debt and the fair market value of the vehicle.

## Count IV
## (Violations of Chapter 93A)

50.     By engaging in the conduct complained of, FMCC engaged in unfair and deceptive acts and practices, in violation of M.G.L. c. 93A. As a result thereof, Ms. Herforth has been damaged in an amount to be determined at trial.

51.     FMCC's unfair and deceptive practices include, without limitation:

(a)     Collecting a debt in an unfair, deceptive or unreasonable manner in violation of G.L. c. 93 § 49;
(b)     Making a knowingly false or misleading representation as to the character, extent and/or amount of the debt, or as to its status in a legal proceeding in violation of 940 CMR 7.07(2);
(c)     Attempting to collect debts that are not legally owed in whole or in part, by *inter alia*, sending demand letters for inflated amounts, and filing law suits seeking inflated amounts;

11

(d)   Breaching its duty of good faith in violation of G.L. c. 106 § 1-202;

(e)   Engaging in unconscionable practices in the collection of a claim arising from a contract in violation of G.L. c. 106 § 2A-108(2); and

(f)   Failing to provide Ms. Herforth with the rights and disclosures mandated by RISA and the UCC.

52.   FMCC performed the actions described herein willfully and knowingly, or with reckless disregard of applicable law, all within the meaning of G.L. c. 93A § 9.

## Count V
### (Declaratory Judgment)

53.   Pursuant to M.G.L. c. 231A. § 1, Ms. Herforth and class members seek a declaration that FMCC's conduct violates RISA, the UCC and c. 93A, as alleged in Counts I-IV; and that class members are entitled to a recalculation of deficiency balances due under Retail Installment Sale Agreements based upon the difference between the amount realized upon sale of the repossessed vehicle and the full amount owing under the contract pursuant to c. 255B, § 20B(e)(1), and to whatever individual rights they have to pursue remedies therefor.

## Prayer For Relief

WHEREFORE, Ms. Herforth respectfully prays for relief as follows:

A.   For an order certifying this claim as a class action;

B.   For a declaration that FMCC's conduct violates RISA, the UCC and c. 93A, as alleged in Counts I-IV and that class members are entitled to a recalculation of deficiency balances due under Retail Installment Sale Agreements based upon the difference between the amount realized upon sale of the repossessed vehicle and the full amount owing under the contract pursuant to c. 255B, § 20B(e)(1), and to whatever individual rights they have to pursue remedies therefor;

12

C.    For an order preliminarily and permanently enjoining FMCC from engaging in the practices challenged herein;

D.    For statutory damages for each class member pursuant to UCC § 9-625(c)(2) in the amount of the finance charge plus ten percent of the principal amount of the obligation applicable to that class member's contract;

E.    For statutory damages for each sub-class member pursuant to UCC § 9-625(e)(5) in the amount of $500;

F.    For actual or statutory damages pursuant to c. 93A;

G.    For multiple damages pursuant to c. 93A;

H.    For attorneys' fees and costs;

I.    For pre-judgment interest to the extent permitted by law;

J.    For such other and further relief as the Court may deem just and proper.

### Demand For Jury Trial

Ms. Herforth demands a trial by jury of all issues so triable.

Respectfully submitted,

September 17, 2010

John Roddy, BBO # 242420
Elizabeth Ryan, BBO # 549632
Roddy Klein & Ryan
727 Atlantic Avenue, 2d Floor
Boston, MA  02111
(617) 357-5500 x17

Elizabeth A. Miller, BBO # 559347
Attorney at Law
P.O. Box 66026
Auburndale, MA  02466
(617) 467-4335

13

**MASSACHUSETTS SIMPLE INTEREST VEHICLE RETAIL INSTALLMENT CONTRACT**     DATE _____

| 1-800-727-7000 | Buyer (and Co-Buyer, if Any) Name and Address (Including County and Zip Code) | SELLER/CREDITOR (Seller Name and Address) |
|---|---|---|
| **Ford Credit** / Ford | SANDRA L HERFORTH<br>132 HIGH STREET<br>NEWTON MA 02464 | MUZI MOTORS INC<br>557 HIGHLAND AVENUE<br>NEEDHAM HEIGHTS MA 02494 |
| www.fordcredit.com | | |

You, the Buyer (and Co-Buyer, if Any), may buy the vehicle described below for cash or on credit. The cash price is shown below as "Cash Price." The credit price is shown below as "Total Sale Price." By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract.

| New/Used | Mileage | Year and Make | Model | Vehicle Identification Number | Use For Which Purchased |
|---|---|---|---|---|---|
| NEW | | 2006 FORD TRUCK | EXPLORER | 1FMEU73E06UA13162 | ☐ Personal   ☐ Agricultural<br>☐ Commercial |

| Trade-in | | $ N/A | $ N/A |
|---|---|---|---|
| | Year and Make | Gross Allowance | Amount Owing |

## ITEMIZATION OF AMOUNT FINANCED

| | | |
|---|---|---|
| 1. Cash Price .................................................. $ 47054.00 (1) | | |
| 2. Down Payment | | |
|    Third Party Rebate Assigned to Creditor ............... $ 4500.00 | | |
|    Cash Down Payment ....................................... $ 7500.00 | | |
|    N/A .......................................................... N/A | | |
|    Trade-in (description above) ............................ $ N/A | | |
|    Total Down Payment ...................................... $ 5000.00 (2) | | |
| 3. Unpaid Balance of Cash Price (1 minus 2) $ 42054.00 (3) | | |
| 4. Amounts paid on your behalf (Seller may be retaining a portion of these amounts) | | |
|    To Public Officials | | |
|     (i) for license, title & registration | | |
|      fees $ 85.00 | | |
|     (ii) for filing fees $ N/A | | |
|     (iii) for taxes (not in Cash Price) $ 1317.00 ............ $ 1933.00 | | |
|    To Insurance Companies for: | | |
|     Credit Life Insurance .................................. $ N/A | | |
|     Credit Disability Insurance ........................... $ N/A | | |
|     N/A ....................................................... $ N/A | | |
|     N/A ....................................................... $ N/A | | |
|    To N/A   for N/A ....................................... $ N/A | | |
|    To N/A   for N/A ....................................... $ N/A | | |
|    To FORD ESP   for SERVICE CONTRACT .......... $ 1525.00 | | |
|    To N/A   for N/A ....................................... $ N/A | | |
|    To N/A   for N/A ....................................... $ N/A | | |
|    To N/A   for N/A ....................................... $ N/A | | |
|    Total ...................................................... $ 3807.00 (4) | | |
| 5. Amount Financed (3 plus 4) ..................... $ 45861.00 (5) | | |

## INSURANCE

YOU ARE REQUIRED TO INSURE THE VEHICLE. YOU MAY OBTAIN VEHICLE INSURANCE FROM A PERSON OF YOUR CHOICE.

LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED.

YOU CANNOT BE DENIED CREDIT SIMPLY BECAUSE YOU CHOOSE NOT TO BUY CREDIT INSURANCE. CREDIT LIFE INSURANCE AND CREDIT ACCIDENT AND HEALTH INSURANCE AND CREDIT INVOLUNTARY UNEMPLOYMENT INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT. INSURANCE WILL NOT BE PROVIDED UNLESS YOU SIGN AND AGREE TO PAY THE ADDITIONAL CHARGE.

Credit
☐ Life   N/A
    Insurance Company
$ N/A
  Premium    insured(s)
You want Credit Life Insurance.

Buyer Signs _____

Co-Buyer Signs _____

Credit
☐ Disability   N/A
    Insurance Company
$ N/A
  Premium    insured(s)
You want Credit Disability Insurance.

Buyer Signs _____

Co-Buyer Signs _____

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you | The amount of credit provided to you or on your behalf | The amount you will have paid when you have made all scheduled payments | The total cost of your purchase on credit, including your downpayment |
| 15.39 % | $ 20134.90 | $ 45861.50 | $ 65996.40 | of $ 5000.00 $ 70996.40 |

| Your Payment Schedule will be: | | |
|---|---|---|
| Number of Payments | Amount of Payments | When Payments are Due ☑ Monthly ☐ Semi-Annually ☐ Annually |
| 60 | 1099.94 | starting APRIL 05 2006 |

| Your Payment Schedule will be: | | |
|---|---|---|
| Number of Payments | Amount of Payments | When Payments are Due<br>☑ Monthly ☐ Semi-Annually ☐ Annually |
| 60 | 1089.94 | starting APRIL 05, 2005 |
| N/A | N/A | N/A |
| N/A | N/A | N/A |

**Prepayment:** If you pay off your debt early, you will not have to pay a penalty.
**Security Interest:** You are giving a security interest in the vehicle being purchased.
**Late Payment:** You must pay a late charge on the portion of each payment received more than 15 days late. The charge is 5 percent of the late amount or $5.00, whichever is less.
**Contract:** Please see this contract for additional information on security interest, nonpayment, default, the right to require repayment of your debt in full before the scheduled date, and prepayment penalty.

**COMMERCIAL USE LATE CHARGE PAYMENT:** If you purchased the vehicle for commercial use, you must pay a late charge on the portion of each payment received more than 15 days late of 7.5% of the late amount or $50.00, whichever is less.

## BALLOON CONTRACT PROVISIONS

☐ Your last installment payment under this contract is a balloon payment.

### EXCESS WEAR, USE AND MILEAGE CHARGES

If the box directly above is checked, this section, Paragraph B, and Paragraph C of this contract apply. You may be charged for excessive wear based upon our standards for normal use. If you exercise the option to sell the vehicle back to Creditor under Paragraph B, you must pay the Creditor $0. _____N/A_____ per mile for each mile in excess of _____N/A_____ miles shown on the odometer.

### EXTRA MILEAGE OPTION CREDIT

If this contract contains a balloon payment (as indicated above), and you have exercised your Option to sell the vehicle to the Creditor under Paragraph B, this paragraph applies to your contract. At the scheduled end of this contract, You will receive a credit of $0. _____N/A_____ per unused mile for the number of unused miles between _____N/A_____ and _____N/A_____ miles, less any amounts You owe under this contract. You will not receive any credit if the vehicle is destroyed, this contract ends early, or you are in default. You will not receive any credit if the credit is less than $1.00.

Any change in this contract must be in writing and signed by you and the Creditor.

Buyer Signs _____

Co-Buyer Signs _____

YOU ACKNOWLEDGE THAT YOU HAVE READ AND AGREE TO BE BOUND BY THE ARBITRATION PROVISION ON THE REVERSE SIDE OF THIS CONTRACT.

The Annual Percentage Rate may be negotiated with the Seller. The Seller may assign this contract and may retain its right to receive a portion of the Finance Charge.

## NOTICE TO THE BUYER

1. Do not sign this contract if any of the spaces intended for the agreed terms to the extent of then available information are left blank. 2. You are entitled to an exact copy of the contract you signed. 3. Under the law, you have the following rights, among others: (a) to pay off in advance the full amount due and to obtain a partial refund of the finance charge; (b) to redeem the property if repossessed for default; (c) to require, under certain conditions, a resale of the property if repossessed.

Buyer (and Co-Buyer) acknowledge that (i) before signing this contract, Buyer (and Co-Buyer) received and reviewed a true and completely filled in copy of this contract and (ii) at the time of signing this contract, Buyer (and Co-Buyer) received a true and completely filled in copy of this contract.

Buyer _____   Co-Buyer _____
Signs                             Signs

Seller _____ By _____ Title _____
THIS CONTRACT IS NOT VALID UNTIL YOU AND SELLER SIGN IT.

---

Buyer Signs _____

Co-Buyer Signs _____

### OTHER OPTIONAL INSURANCE

| Coverage and Insurance Company | Premium and Term in Months |
|---|---|
| | $ |
| By _____ | N/A |
| _____N/A_____ | $ _____N/A_____ |
| By _____N/A_____ | N/A |

You want the optional insurance for which premiums are included above.

Buyer Signs _____

Co-Buyer Signs _____

**Credit Life and Credit Disability Insurance are for the term of the contract. The amount and coverages are shown in a notice or agreement given to you today.**

☐ Debt Cancellation Waiver Addendum (Optional) If this box is checked you have purchased a debt cancellation waiver. Purchase of the coverage is optional and is not required to obtain credit. The terms and conditions of the debt cancellation waiver are set forth in the attached Addendum which is incorporated into this contract. The price for the debt cancellation waiver is set forth in this contract in the Itemization of Amount Financed under section 4.

Buyer Signs _____

## ADDITIONAL AGREEMENTS

**A.  Payments:** You must make all payments in U.S. funds when they are due. You may prepay your debt at any time without penalty. This is a simple interest contract. The actual finance charge you agree to pay will depend on your payment patterns. The actual finance charge may exceed the disclosed Finance Charge if you make your payments later than the scheduled dates or in less than the scheduled amount. Your payment will be applied first to the earned and unpaid part of the Finance Charge and then to the unpaid Amount Financed. The Finance Charge is earned by applying the Annual Percentage Rate to the unpaid Amount Financed for the actual time that the unpaid Amount Financed is outstanding.

**B.  Balloon Payment Contracts:** If your last installment payment under this contract is a balloon payment as indicated on the front of the contract, you may handle the last installment payment in one of three ways.
First, you may pay all that you owe when the last installment payment is due and keep your motor vehicle.
Second, you may refinance the last installment payment unless you are in default under this contract. If the Creditor has advanced funds to cure any default, you must pay back the Creditor before the refinancing. You also must provide proof of insurance acceptable to Creditor before the refinancing. The Annual Percentage Rate (APR) for the refinancing will be the lower of the APR agreed to by you and the Creditor or the maximum APR permitted by law. The term of the refinancing will be based on the amount refinanced, the rate, and the amount of the monthly payment. The refinanced monthly payment shall be the same as in this contract if the refinanced amount will be fully paid within 36 months of the due date of the last installment payment. Otherwise, the monthly payment amount shall be the amount needed to fully pay the refinanced amount within 36 months of the due date of the last installment payment. If you wish to refinance you must notify the Creditor in writing. Except as discussed in this section, the notice must be received no later than 30 days prior to the due date of the last installment payment.
Third, you may sell the vehicle to the Creditor for an amount equal to the last installment payment. You must pay to the Creditor any other amount owed under the contract. Amounts you owe will be based, in part, on the vehicle's mileage. You also must pay to the Creditor the estimated costs of all repairs to the vehicle that are the result of excess wear and use, as set forth below. You must take the vehicle to a place selected by the Creditor for inspection no later than 15 days prior to the last installment payment due date. After the inspection, if you decide to sell the vehicle to the Creditor, you must give the vehicle to the Creditor no later than the last installment payment due date. At that time, you must also give the Creditor a title, which shows no liens other than the Creditor's lien, transferring ownership to the Creditor or a person selected by the Creditor. After the inspection, if you decide not to sell the vehicle to the Creditor, you must immediately contact the Creditor and inform the Creditor whether you want to refinance the last installment payment.

**C.  Damage Repair:** If your last installment payment under this contract is a balloon payment and you sell the vehicle back to the Creditor under Paragraph B, you are responsible for repairs of all damage to the vehicle that are not the result of normal wear and use. These repairs include, but are not limited to, those necessary to:
(i)  replace any tire not part of a matching set of four or any tire which has less than 1/8 inch of remaining tread;
(ii)  repair all mechanical defects;
(iii)  repair or replace all dented, scratched, chipped, rusted or mismatched body panels, paint or vehicle identification items; all dented, scratched, rusted, pitted, broken or missing trim and grill work; all scratched, cracked, pitted or broken glass; all faulty window mechanisms; all broken or burned out lights; all electronic malfunctions; all interior rips, stains, burns or worn areas; and all damage which would be covered by collision or comprehensive insurance whether or not such insurance is actually in force.
If you have not made the repairs before inspection of the vehicle under Paragraph B, you will owe the estimated costs of such repairs, even if the repairs are not made prior to your sale of the vehicle to the Creditor. If you disagree with the estimated costs of repairs, you may have the repairs made at your expense prior to your sale of the vehicle to the Creditor.

**D.  Security Interest:** You give the Creditor a security interest in:
1.  The vehicle and all parts or other goods put on the vehicle;
2.  All money or goods received for the vehicle; and
3.  All insurance premiums and service contracts financed for you.
This secures payment of all amounts you owe under this contract. It also secures your other agreements in this contract.

Creditor. If your insurance on the vehicle doesn't pay all you owe, you must pay what is still owed.

**G.  Returned Insurance Premiums and Service Charge Charges:** This contract may contain charges for insurance, service contracts, or other contracts. You agree that the Creditor can claim benefits under these contracts and unless prohibited by law, terminate them to obtain refunds of unearned charges to reduce what you owe. If the Creditor gets a refund of unearned charges to reduce what you owe. If the Creditor gets a refund on insurance, service contracts, or other contracts, the Creditor will subtract it from what you owe. Once all amounts owed under this contract are paid, any remaining refunds will be paid to you.

**H.  Returned Check Charge:** You agree to pay a returned check charge of $16.00 for each check, draft, or other for the payment of money that is dishonored for any reason.

**I.  Default:** You will be in default if:
1.  You do not make a payment when it is due; or
2.  You gave false or misleading information on your credit application relating to this contract; or
3.  Your vehicle is seized by any local, state, or federal authority and is not promptly and unconditionally returned to you; or
4.  You file a bankruptcy petition or one is filed against you; or
5.  You do not keep any other promise in this contract.
If you default, Creditor can exercise Creditor's rights under this contract and Creditor's other rights under the law.

**J.  Repossession:** If you default, the Creditor may require you to pay at once the unpaid Amount Financed, the earned and unpaid part of the Finance Charge and all other amounts due under this contract. Creditor may repossess (take back) the vehicle, too. Creditor may also take goods found in or on the vehicle when repossessed and hold them for you.

**K.  Your Right to Redeem:** If the vehicle is taken back, Creditor will send you a notice. The notice will say that you may redeem (buy back) the vehicle and will explain how to redeem the vehicle. You may redeem the vehicle up to the time the Creditor sells it or agrees to sell it. If you do not redeem the vehicle, it will be sold.

**L.  Disposition of Motor Vehicle:** If the vehicle is taken back and sold, the money from the sale, less allowed expenses, will be used to pay the amount still owed on the contract. Allowed expenses include those paid as a direct result of having to retake the vehicle, hold it, prepare it for sale, and sell it. Reasonable lawyer's fees and legal costs are allowed, too. If there is any money left (surplus), it will be paid to you. If the money from the sale is not enough to pay off this contract and costs, you will pay what is still owed to the Creditor. If you do not pay the amount when the Creditor asks, the Creditor may charge you interest at the highest lawful rate until you pay.

**M.  Collection Costs:** Except as otherwise provided by law, you must pay any and all expenses related to enforcing this contract, including collection expenses, lawyers' fees and other legal expenses.

**N.  Consumer Reports:** You authorize the Assignee listed on the front of this contract to obtain consumer credit reports from consumer reporting agencies (credit bureaus) for any reason and at any time in connection with this contract.

**O.  Applicable Law:** You agree that this contract will be governed by the laws of the state of Massachusetts.

**P.  General:** This contract contains the entire agreement between Creditor and you relating to the sale and financing of the motor vehicle. If any part of this contract is not valid, all other parts stay valid. If Creditor doesn't enforce Creditor's rights every time, Creditor can still enforce them later. Creditor will exercise all of Creditor's rights in a lawful way. If the last installment payment under this contract is a balloon payment, Assignee has assigned to GI Exchange, in its capacity as Assignee's qualified intermediary, its rights (but not its obligations) with respect to the purchase and sale of this vehicle.



This secures payment of all amounts you owe under this contract. It also secures your other agreements in this contract.

**E.  Use of Vehicle - Warranties:** You must take care of the vehicle and obey all laws in using it. You may not sell or rent the vehicle, and you must keep it free from the claims of others. You will not use or permit the use of the vehicle outside of the United States, except for up to 30 days in Canada or Mexico without the prior written consent of the Creditor. If the vehicle is of a type normally used for personal use and the Creditor, or the vehicle's manufacturer, extends a written warranty or service contract covering the vehicle within 90 days from the date of this contract, you get implied warranties of merchantability and fitness for a particular purpose covering the vehicle. Otherwise, you understand and agree that there are no such implied warranties, except as otherwise provided by law.

**F.  Vehicle Insurance:** You must insure the vehicle against loss or damage from collision, fire or theft. You must name Creditor as the loss payee under the insurance policy. The Creditor must approve the type and amount of insurance. If the vehicle is lost, damaged or destroyed, you must pay the Creditor what is still owed.

You agree that the Creditor can make a claim under the insurance policy. You authorize the insurance company to provide Creditor any information Creditor believes necessary to make a claim. You must use insurance proceeds to repair the vehicle, unless the damage to the vehicle is considered a total loss. If the damage to the vehicle is considered a total loss, you must use the insurance proceeds to pay what you owe the

**FTC NOTICE:**

NOTICE - ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.*

**Used Motor Vehicle Buyers Guide.** If you are buying a used vehicle with this contract, federal regulations may require a special Buyers Guide to be displayed on the window of the vehicle. THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

*Does not apply if purchased for commercial or agricultural use. In that case, you (debtor) will not assert against any assignee or subsequent holder of this Contract any claims, defenses, or setoffs which you may have against the Seller or manufacturer of the vehicle.

---

**GUARANTY**

To cause the Seller to sell the vehicle described on the front of this contract to the Buyer on credit, each person who signs below as a "Guarantor" guarantees the payment of this contract. This means that if the Buyer fails to pay any money that is owed on this contract, each person who signs as a guarantor will pay it when asked. Each Guarantor who signs below agrees that he will be liable for the whole amount owed even if one or more other persons also signs this Guaranty. Each Guarantor also agrees to be liable even if the Creditor does one or more of the following: (a) gives the Buyer more time to pay one or more payments; or (b) gives a release in full or in part to any of the other Guarantors, or (c) releases any security. Each Guarantor also states that he has received a completed copy of this contract and this Guaranty at the time of signing.

Guarantor _____   Address _____

Guarantor _____   Address _____

---

**READ THIS ARBITRATION PROVISION CAREFULLY AND IN ITS ENTIRETY**

**ARBITRATION**

Arbitration is a method of resolving any claim, dispute, or controversy (collectively, a "Claim") without filing a lawsuit in court. Either you or Creditor ("us" or "we") reach a ("Party") may choose at any time, including after a lawsuit is filed, to have any Claim related to this contract decided by arbitration. Such Claims include but are not limited to the following: 1) Claims in contract, tort, regulatory, or otherwise. 2) Claims regarding the interpretation, scope, or validity of this clause, or arbitrability of any issue; 3) Claims between you and us, your/our employees, agents, successors, assigns, subsidiaries, or affiliates; 4) Claims arising out of or relating to your application for credit, this contract, or any resulting transaction or relationship, including that with the dealer, or any such relationship with third parties who do not sign this contract.

**RIGHTS YOU AND WE AGREE TO GIVE UP**

If either you or we choose to arbitrate a Claim, then you and we agree to waive the following rights.

* RIGHT TO A TRIAL, WHETHER BY A JUDGE OR JURY
* RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR A CLASS MEMBER IN ANY CLASS CLAIM YOU MAY HAVE AGAINST US WHETHER IN COURT OR IN ARBITRATION
* BROAD RIGHTS TO DISCOVERY AS ARE AVAILABLE IN A LAWSUIT
* RIGHT TO APPEAL THE DECISION OF AN ARBITRATOR
* OTHER RIGHTS THAT ARE AVAILABLE IN A LAWSUIT

**Rights You And We Do Not Give Up:** If a Claim is arbitrated, you and we will continue to have the following rights, without waiving this arbitration provision as to any Claim: 1) Right to file bankruptcy in court; 2) Right to enforce the security interest in the vehicle, whether by repossession or through a court of law; 3) Right to take legal action to enforce the arbitrator's decision; and 4) Right to request that a court of law review whether the arbitrator exceeded its authority.

Either Party must contact one of the associations listed below and the other Party to start arbitration. The applicable rules (the "Rules") may be obtained from the association.

* American Arbitration Association ("AAA"), at 1-800-778-7879, or www.adr.org;
* National Arbitration Forum, at 1-800-474-2371, or www.arb-forum.com.

MAR 0 9 2009

## RESCHEDULE OF PAYMENTS AGREEMENT

ACCT NO ██████████                                           DATE __02/15/2009__

You, the Buyer (and Co-Buyer), are asking the 'Servicer" of the contract ("Contract") described below for the following property ("Property"), to change the payments due under the Contract.

### Description of Contract

| Type of Contract | Date of Contract | Account Number | Original Amount Financed |
|---|---|---|---|
| Retail Installment | 02/19/2006 | 40267267 | $45,861.50 |

### Description of Property

| Year | Make | Model | Body Type | Vehicle Identification Number |
|---|---|---|---|---|
| 2006 | FORD | EXPLR | 4DR | 1FMEU758X6ZA13162 |

Buyer and Holder agree to change the Contract only as set out in this agreement. The other provisions of the Contract remain in full force and effect.

### ITEMIZATION OF AMOUNT FINANCED

| | | | |
|---|---|---|---|
| (1) Present Unpaid Balance | $ | 34,534.61 | (1) |
| (2) Refund Credit | $ | NA | (2) |
| (3) Amount Paid on Your Account (1 minus 2) | $ | 34,534.61 | (3) |

(4) Amounts Paid on Your Behalf

To Public Officials
  (1) for official fees    $ _____NA_____
  (2) for _____ $ _____NA_____    $ _____NA_____

To Insurance Companies for
  Property Insurance _____ $ _____NA_____
  Credit Life Insurance _____ $ _____NA_____
  Credit Disability Insurance _____ $ _____NA_____
  To _____ for _____ $ _____NA_____
  To _____ for _____ $ _____NA_____
  To _____ for _____ $ _____NA_____

| | | | |
|---|---|---|---|
| | | $ NA | (4) |
| (5) Amount Financed (3 plus 4) | | $ 34,534.61 | (5) |

---

| | | |
|---|---|---|
| Amount Financed (The amount of credit provided to you or on your behalf) | $ | 34,534.61 |
| **FINANCE CHARGE** (The dollar amount the credit will cost you) | $ | 15,819.63 |
| **ANNUAL PERCENTAGE RATE** (The cost of your credit as a yearly rate) | 14.59% | |
| Total of Payments (The amount you will have paid when you have made all scheduled payments) | $ | 50,354.24 |

Payment Schedule - Your payments schedule will be:

| | Number of Payments | Amount of Each Payment | When Payments are due monthly starting |
|---|---|---|---|
| ☑ | 65 | $762.95 | 03/15/2009 |
| ☑ | 1 Final | $762.49 | 08/15/2014 |

Prepayment. If you pay off early, you
☐ may ☑ will not have to pay a penalty.
☐ may ☑ will not be entitled to a refund of part of the finance charge.

Late Payment: You must pay a Late charge on the portion of each Payment, received more than __15__ days late. The charge is $ __2__ or $2.00, whichever is less.*
(*whichever is greater in Idaho, Illinois, Maryland, South Dakota, Utah, and Wyoming.)

Security Interest: You have given a security interest in the Property being purchased.

Contract: Please see the contract for additional information on security interest, nonpayment, default, the right to require repayment of your debt in full before the scheduled date and prepayment refund and penalties.

_____              _____
**Buyer Initials**                 **Co-Buyer Initials**

Reschedule of Payments Agreement
Page 1 of 2

**INSURANCE**

**A. Property Insurance:**

Your are required to insure the Property. If a charge is shown below, the holder of the contract will try to buy the coverages checked for the term shown. Coverages will be based on the cash value of the Property at the time of loss but not more than the limits of the policy.

☐ Comprehensive          ☐ Fire-Theft-Combined          ☐ Term _____ Months (Estimate)
                              Additional Coverage

☐ $ NA    deductible    ☐ Towing and Labor          Premium    $ NA
          collision

LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED
PROPERTY INSURANCE MAY BE OBTAINED FROM A PERSON OF YOUR CHOICE

**B. Credit and Other Optional Insurance:**

CREDIT LIFE, CREDIT DISABILITY AND OTHER OPTIONAL INSURANCE ARE NOT REQUIRED TO OBTAIN
CREDIT AND WILL NOT BE PROVIDED UNLESS YOU SIGN AND AGREE TO PAY THE PREMIUM

☐ Credit Life _____          $ NA
              Insurer              Insured(s)          Premium              Signature(s)

☐ Credit
Disability _____          $ NA
              Insurer              Insured          Premium              Signature

Credit Life and Credit Disability insurance are for the term of the contract. The amount and coverages are shown in a notice or agreement given to you on this date.

_____          $ NA
Type of Insurance          Insurer          Term          Premium              Signature

**NOTICE TO THE BUYER:** Do not sign this agreement before you read it or if it contains any blank spaces. You are entitled to an exact copy of the agreement you sign.

Buyer acknowledges that (i) before signing this agreement, Buyer received and reviewed a true and completely filled-in copy of both pages of this contract and (ii) at the time of signing this contract, Buyer received a true and completely filled-in copy of both pages of this contract.

Buyer Signs ▶ _Sandra L Herforth_          (Co)Buyer Signs ▶
              SANDRA L HERFORTH

Guarantor Signs ▶

Servicer: Ford Motor Credit Company          By: _M. Whelu_          3/13/09
P.O. Box 3111, Tampa, FL 33631-3111

GEN 7132-S  June 03          **SIGN IN INK**
Previous editions may NOT be used.

Date      June 17, 2009

Date of
Contract   February 19, 2008



Ford Motor Credit Company
P.O. Box 31111
Tampa FL 33631-3111
877-449-6260

SANDRA L HERFORTH
152 HIGH ST
NEWTON MA 02464

## RIGHTS OF DEFAULTING BUYER UNDER THE MASSACHUSETTS MOTOR VEHICLE INSTALLMENT SALES ACT

This is your notice that you have broken your contract.
You are in default in performance of your obligations under your contract for the purchase of the property described below as to this:

Five due Payment(s)

| Amount Due | Due Date |
|---|---|
| $   768.94 | May 15, 2009 |
| $   762.93 | June 15, 2009 |
| $ | |

Failure to obtain or maintain required insurance.

Other (Specify):

You may cure your default in your contract for the purchase of the    2008      FORD
                                                                      Year       Make

1FMEU 98K42A15187              the "Collateral" which is identified in our records as  A-0000432617297

Vehicle Identification Number                                              Account Number

on or before July 06, 2009 which is at least twenty one days after this notice is being mailed, by:

Paying to us the following amount:

| | |
|---|---|
| Overdue Payments | $1,531.89 |
| Late Charges/Other Fees Due | $11.00 |
| Total (not including payments that become due after the date of this notice) | $1,451.89 |
| Furnishing proof of required insurance with loss payable endorsement to us. | |
| Other (Specify): | |

If you pay this amount and cure the other defaults listed within the time allowed, you are no longer in default and may continue with the transaction as though no default had occurred.

If you do not cure your default by the date stated above, we may sue you to obtain a judgement for the amount of the debt or, if applicable, may take possession of the Collateral.

### RIGHT TO GET YOUR VEHICLE BACK

If we take possession of the Collateral, if any, you may get it back by paying the full amount of your debt plus any reasonable expenses incurred by us if you make the required payment within twenty days after we take possession or thereafter until it is sold.

Your Balance is now $34,664.25

If you do that before the Collateral is sold, it will be yours. (We have no further claim on it.) This is called your right to "Redeem". The Collateral will not be sold until at least 20 days after we repossess it. You can get it back by paying the balance plus costs any time before it is actually sold. The longer you wait the more costs, including repairs, you may have to pay.

### RIGHT TO MONEY LEFT OVER FROM SALE

If the Collateral is sold, the sale price minus expenses will be deducted from your debt. If any money is left over it must be paid to you within 45 days after the sale. If you don't get this money, you may have a right to sue for it, plus penalties, under state law.

In some areas, we return repossessed collateral to the dealer/original creditor who sold it. If we do that with yours, our agreement with your dealer/original creditor says that the dealer/original creditor is to sell it and pay you any money left over.

### INSURANCE RIGHTS

If we repossess the Collateral, any insurance should be cancelled. You have a right to get credit for any premium refunds.

### REMAINING DEBT

The sale price might not cover your debt and expenses. If that happens, you'll owe the difference to us or the dealer/original creditor except that under state law we can't collect anything further from you if the unpaid balance at the time of default under a contract covering the financing of a motor vehicle was less than $2,000. Neither can the dealer/original creditor.

Ford Motor Credit Company

CUSTOMER SERVICES

NOTICE:  The acceptance by us of these or other late payments does NOT waive our right to repossess or take other appropriate action WITHOUT NOTICE if you fail to make future payments on time. YOU ARE REQUIRED TO MAKE ALL PAYMENTS ON TIME.

| Date of Repossession | 10-20-2009 | |
|---|---|---|
| Date of Notice | Date of Contract | |
| 10-21-2009 | 12-15-2006 | |
| Account Number | ████████ | |
| Buyer SANDRA L HERFORTH | | |
| Cobuyer | | |

**DESCRIPTION OF PROPERTY**

| Year | Make | X New |
|---|---|---|
| 2006 | FORD | ☐ Used |

Vehicle Identification Number

1FMEU73RX6ZA13162

| Model | Body |
|---|---|
| EXPLR | 4DR |

Ford Motor Credit Company
P.O. Box 31111
TAMPA  FL 33631-3111
███-349-5060

FDXWUJ40R200063
SANDRA L. HERFORTH
132 HIGH ST
NEWTON MA 02464

## NOTICE OF OUR PLAN TO SELL PROPERTY

We have your property described above because you broke promises in our agreement.

| [X] **PRIVATE SALE**: We will sell the property described above at private sale sometime after **20** days from the Date of Notice shown above. | [ ] **PUBLIC SALE**: We will sell the property described above at public sale to the highest bidder on the date below, or any adjournment date. The sale will be held as follows: |
|---|---|

| Date of Sale | Time of Sale | Place of Sale |
|---|---|---|
| | | |
| | | |

You may attend the sale and bring bidders if you want.

The money that we get from the sale (after paying our costs, including reasonable attorney's fees and legal expenses if permitted by law) will reduce the amount you owe. If we get less money than you owe, you will still owe us the difference. If we get more money than you owe, you will get the extra money, unless we must pay it to someone else.

You can get the property back at any time before we sell it by paying us the full amount you owe (not just the past due payments), including our expenses. To learn the exact amount you must pay, call us at the telephone number above.

If you want us to explain to you in writing how we have figured the amount that you owe us, you may call us at the telephone number above, or write us at the address above and request a written explanation.

If you need more information about the sale call us at the telephone number above, or write us at the address above.

We are sending this notice to the following people who have an interest in the property described above or who owe money under your agreement: 1) The buyer and any cobuyer named above; 2) Any dealer/original creditor named below; 3) If there are other people, they are named on an attachment sent with this notice.

[ ] The property has been (or will be) returned to _____ (dealer/original creditor).

Under our agreement with your dealer or original creditor, the dealer/original creditor is to sell the property and pay you any money left over. If you owe money after the sale, you will pay it to the dealer/original creditor.

[X] PERSONAL PROPERTY: Any personal property found in the vehicle may be reclaimed by you within the next 60 days or, in accordance with state law, by contacting this office. Thereafter, the personal property shall be disposed of accordingly.

[ ] Lienor has also agreed to the dual fixed information (FDI Exchange-t). Or its rights but FDI is its obligations with respect to the sale of each vehicle listed above.

PAYMENTS: All payments to us must be by certified check or money order.

MILEAGE DISCLOSURE: If you are aware that the mileage reflected on the vehicle's odometer is not accurate for any reason, please contact us so that we can accurately record the vehicle's mileage.

INSURANCE RIGHTS: If you don't want to get your property back, call the insurance company of the dealer/original creditor to make sure that any insurance has been cancelled. You have a right to get credit for all premiums refunds.

FDXWUJ40R200063 Law 23 (amounts entered) MAY NOT BE USED.
printed 10-21-09

**BELINDA VEGA**

CUSTOMER/CUSTOMER FILE

Ford Motor Credit Company
P.O. BOX 31111
TAMPA FL 33631-3111
877 3495260

**DATE:** 2009-12-09

P0Y8VB0G100J49
SANDRA L. HERFORTH
132 HIGH ST
NEWTON MA 02464

## STATEMENT OF SALE

Account Number: ▮▮▮▮▮

The following property has been sold.

| Year | Make | Model | Vehicle Identification Number: |
|------|------|-------|-------------------------------|
| 2006 | FORD | EXPLR | 1FMEU75SX6ZA13162 |

| | | |
|---|---|---|
| Balance owing on your contract | (1) $ | 34,030.06 |
| **Deduct:** Finance Charge Rebate | (2) $ | 0.00 |
| Balance less Finance Charge Rebate (1 - 2) | (3) $ | 34,030.06 |
| **Deduct:** gross proceeds of the sale | (4) $ | 15,600.00 |
| Balance less gross proceeds of the sale (3 - 4) | (5) $ | 18,430.06 |
| **Add:** Expenses of retaking and storing, and any attorneys' fees allowed by law, and expenses of reconditioning and selling. | (6) $ | 427.50 |
| **Deduct:** Insurance Premium Rebate | (7) $ | 0.00 |
| Other | (8) $ | 70.62 |
| | (9) $ | 18786.94 |
| Deficiency** | (10) $ | N.A. |
| Surplus* | | |

The Surplus/Deficiency will change based on monies received by us (credits) or additional allowed expenses & interest added to your account (debits).

Surplus* or Deficiency**

* If the sale resulted in a surplus, a refund for the difference will be mailed to you
** If the sale resulted in a deficiency, you should immediately remit the amount shown on line 9 to the address for payments shown below.

| For additional information call or write: | Mail deficiency payment to: |
|---|---|
| Ford Motor Credit Company | Ford Motor Credit Company |
| P.O. BOX 6508 | DEPT 194101 |
| MESA ARIZONA 85216-6508 | P.O. BOX 55000 |
| (800) 732-2264 | DETROIT MI 48255-1941 |

FPNA1 1996 9/04 Previous editions may NOT be used